**Arcangelo CIANFARANO, Plaintiff,**

v.

**UNITED STATES GOVERNMENT, The Bureau of Prisons and The United States Marshall's Service, Defendants.**

No. 08CV3877(ADS).

United States District Court,
E.D. New York.

Nov. 10, 2008.

Law Offices of Thomas F. Liotti, by Thomas F. Liotti, Esq., Garden City, NY, for Plaintiff.

Benton J. Campbell, United States Attorney, Eastern District of New York, by Peter A. Norling, Assistant United States Attorney, Central Islip, NY, for Defendants.

## ORDER

SPATT, District Judge.

### I. BACKGROUND

On May 26, 2006, the petitioner, Arcangelo Cianfarano pled guilty to a single-count information charging him with conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. The charge stemmed from Cianfarano's participation in a scheme to defraud insurance companies by inflating damage estimates and charge insurance companies for damage inflicted by himself and others on vehicles serviced at Cavalier Auto Body in Huntington Station, New York, an automobile repair shop co-owned by Cianfarano and Dean Poupis. In addition, the information charged the petitioner with bribery of insurance company adjusters in furtherance of the scheme.

As a result of his plea, Cianfarano was sentenced to a term of eight months imprisonment and received a $5000 fine. Cianfarano brings the present petition pursuant to 28 U.S.C. §§ 2241 and 2255, arguing that the actions on the part of the Office of the United States Attorney ("the government") during the negotiations of his plea agreement and thereafter violate several Constitutional principles, including, the right to due process, no taxation without representation, and the prohibition on cruel and unusual punishment. Specifically, the petitioner contends that (1) he was promised a non-incarceration sentence and a dismissal of prosecution in exchange for his cooperation; (2) after giving substantial cooperation to both the state and federal government in building a case against Poupis, he was betrayed and the promises made by the authorities were not honored; (3) he faced deportation by the Patriot Act and therefore had no choice but to agree to the plea arrangement; and (4) the government made a plea deal with Poupis, without Cianfarano's knowledge, and credited all funds seized by the authorities to Poupis, without due process of law.

In 2002, the petitioner was prosecuted by the County of Suffolk for insurance fraud concerning alleged inflated estimates of automobile repairs. The petitioner explains that his company, Cavalier Auto Body was raided by state agents and $117,000 in cash was removed from a safe at that location. In addition, the petitioner contends that several bank accounts were seized by the state authorities. The petitioner offered cooperation to the state authorities and testified without immunity before the Grand Jury. The petitioner states that he was promised by state authorities that all of the monies seized

would be credited towards any state and federal taxes that he may owe and the balance would be returned to him. However, the petitioner contends that he did not receive credit for those funds.

In addition, Cianfarano states that he was initially told by the state authorities that the federal authorities had no interest in the case and would not pursue prosecution. The petitioner asserts that the federal government became involved in the matter at the prompting of the Suffolk County District Attorney, who was dissatisfied with the arrangement that the state agents entered into in exchange for Cianfarano's cooperation.

The petitioner further contends that despite his understanding with the state authorities, once the federal authorities entered the case, he was advised by former Assistant United States Attorney Geoffrey Kaiser that he would have to plead guilty to one or more federal felony counts. Also, while he pursued a plea agreement with the federal government, the United States Attorney's Office failed to advise him that they had entered into a deal with Poupis, which caused all of the seized funds to be credited to Poupis. Moreover, Cianfarano contends that the state and federal prosecutors worked together to coerce him to plead guilty, without advising him of their agreement with Poupis.

In addition, the petitioner states that the government has never shared with his counsel or the Court a *Petite* Policy letter from the Department of Justice authorizing a dual sovereignty prosecution. The petitioner contends that despite several requests, the letter was never produced. He asserts that the letter should be presented to show the underlying rationale for initiating a prosecution that allegedly violated the double jeopardy clause of the United States Constitution.

Further, the petitioner contends that he was compelled to accept the terms of any offer made by the government because as a non-citizen, he faced deportation under the United States Patriot Act, Pub.L. No. 107–56, 115 Stat. 272. The petitioner implies that the government instructed him that if he did not take the deal being offered, he would be deported and face even more jail time.

In addition, the petitioner states that despite his extensive cooperation, without immunity, the government declined to provide him with a United States Sentencing Guidelines Section 5K1.1 letter, but only agreed to permit his attorney to make a Section 5K2 argument to inform the Court of his substantial cooperation.

The petitioner further contends that the Court should vacate his sentence and resentence him to a non-incarcerated term for reasons unrelated to his prosecution. First, Cianfarano explains that in 2004, he agreed to buy Poupis' interest in Cavalier Auto Body and took a lease from Poupis for the space occupied by the repair shop. Cianfarano contends that the lease for that space contains a clause providing that if Cianfarano is ever incarcerated, Poupis can terminate the lease. The petitioner states that Poupis has interfered in this matter in an attempt to subvert a stay of Cianfarano's sentence so that Cianfarano would become incarcerated and his lease terminated.

Second, Cianfarano contends that a term of imprisonment in this case would not serve the societal considerations involved in criminal punishment. The petitioner states that he cooperated with the authorities; has already been punished by the six year duration of these events; he has no criminal history; he pays and has paid all of his taxes; and he has accepted responsibility for his actions. Further, the petitioner states that his business employs more than twenty people, and he is the sole financial supporter of his family and the

sole caretaker of his sick and aged parents.

## The Plea Agreement

The plea agreement, signed by the petitioner, his attorney Thomas F. Liotti, Esq., and AUSA Kaiser on May 25, 2006 provided that the offense to which the petitioner would plead guilty carried a possible term of imprisonment of 27 to 33 months. Also, the agreement allowed for an additional one-level reduction if the defendant pleaded guilty on or before May 31, 2006. (Cianfarano Plea Agreement at ¶ 2). Further, the agreement provided that the defendant reserved the right to move for a downward departure, pursuant to United States Sentencing Guidelines Section 5K2 based solely on the cooperation that he provided to the Suffolk Count District Attorney's Office in connection with its investigation, and the government would not oppose the motion. (Cianfarano Plea Agreement at ¶ 3).

In addition, the plea agreement stated that Cianfarano would "not file an appeal or otherwise challenge the conviction or sentence in the event that the Court impose[d] term of imprisonment of 33 months or below." (Cianfarano Plea Agreement at ¶ 4). Further, the agreement provided that Cianfarano "waives any right to additional disclosure from the government in connection with the guilty plea." (Cianfarano Plea Agreement at ¶ 4).

With respect to potential tax liability, the defendant agreed to cooperate fully with the Internal Revenue Service in the ascertainment, computation and payment of his correct federal income tax liability for the years 1998–2002, including, if necessary, filing amended tax returns for those years. (Cianfarano Plea Agreement at ¶ 4). Further, the agreement provided that "the defendant consents to the issuance of an order by the Court directing that all funds on deposit in the following bank accounts ... be paid directly to the Clerk of the Court, United States District Court, Eastern District of New York ... to be used to pay any restitution ordered by the Court as part of the sentence imposed in connection with the defendant's plea of guilty...." (Cianfarano Plea Agreement at ¶ 4). The agreement then lists two North Fork Bank accounts in the name of Arcangelo Cianfarano and states that "any funds in these accounts that are not required to satisfy defendant's restitution obligation and federal income tax liability will be returned to the defendant." (Cianfarano Plea Agreement at ¶ 4).

Finally, the agreement provided both that it "does not bind any federal, state, or local prosecuting authority other than [the United States Attorney's Office]" and that "[n]o promises, agreement or conditions have been entered into by the parties other than those set forth in this agreement...." (Cianfarano Plea Agreement at ¶ 5–6). The agreement stated that it superceded "all prior promises, agreement or conditions between the parties." (Cianfarano Plea Agreement at ¶ 6).

## The Plea Allocution

The petitioner pleaded guilty to the crime charged in the information before United State Magistrate Judge E. Thomas Boyle on May 25, 2006. Judge Boyle raised the issue of Cianfarano's immigration status and was informed by counsel for Cianfarano that "there has been a negotiated plea agreement and in that plea agreement Mr. Kaiser had quite correctly, at page 2 in subparagraph G, advised us of other potential penalties including possible deportation." (Plea Trans. at 9:18–22). Further, Judge Boyle confirmed with Cianfarano that under the laws of the United States, this case was considered to carry a mandatory deportation penalty. Cianfarano acknowledged this and indicated that he wished to go forward with the guilty plea. (Plea Trans. at 13:16–24).

Cianfarano's counsel also raised the issue of the seized funds, stating: "it's my understanding, through Assistant United States Attorney Kevin Mulry from the Civil Division, who is also working on this matter, that there would be, before sentencing, some apportionment of the monies that have been seized between Mr. Poupis and my client." (Plea Trans. at 20:24–21:4). The following exchange took place:

Mr. Kaiser: Well I can't make any representations with respect to what apportionment may or may not happen vis-a-vis Mr. Poupis.

. . . .

Mr. Kaiser: There ha[ve] been discussions, I can verify between counsel and the Civil Division of my office concerning certain forfeited funds. There are no forfeiture provisions in this agreement. There's simply the turn over consent that's expressed in the agreement with respect to those two bank accounts that I mentioned earlier.

. . . .

The Court: I think what's important and I don't want your client to be misled in any way, I have a plea agreement before me. If it's not in the plea agreement, it's not anything that's enforceable between the parties. So, there are a lot of things that occur in the history of the case and it sounds like especially in this case, there's been a lot of consulting with different people with regard to various aspects of the case. But this is a document, as far as the criminal proceeding, everything has to be—this document, if there are representations that were made by your attorney that are not in this document, then that's not going to be considered binding as far as this plea of guilty is concerned for conviction. You understand that?

The Defendant: Yes.

(Plea Trans. at 21:13–22:17). The petitioner answered "No" when asked whether "[o]ther than the agreement with the Government as stated on the record and marked Court Exhibit A, has anyone made any promise to you that caused you to plead guilty." (Plea Trans. at 27:23–28:2).

Judge Boyle asked Cianfarano the following questions regarding the plea agreement:

The Court: Did you review everything here with your attorney?

The Defendant: Yes, I have. Yes, I have.

The Court: Do you understand everything that's been said?

The Defendant: Yes, I do.

The Court: Is there anything that you disagree with as far as the representations made by Mr. Kaiser as far as what this agreement contains?

The Defendant: No.

(Plea Trans. at 23:14–23). Judge Boyle stated that Cianfarano's plea was knowing and voluntary and recommended that it be accepted. This Court accepted that recommendation.

*The Sentencing*

Cianfarano was sentenced on October 6, 2006 based on a total offense level of 17 and a criminal history category of I, with a United States Sentencing Guidelines range of imprisonment of 24 to 30 months. Cianfarano sought a downward departure pursuant to Section 5K2 and the Court departed downward from the Guidelines range stating that the petitioner was "going to get credit" that was "similar to if the government had given [him] a 5K1.1 letter, which is a big credit." (Sentencing Trans. at 27). The Court imposed a sentence of eight months imprisonment and a fine of $5000, but did not order restitution.

*The Motion to Set Aside Sentence—The First Petition*

On December 6, 2006, the petitioner filed, by request for Order to Show Cause, an application seeking to vacate the sentence and requesting a re-sentencing. The application purported to be made pursuant to Rules 32.1; 32.2(d); 33(b)(2); 36 and 38 of the Federal Rules of Criminal Procedure and 28 U.S.C. §§ 2241 and 2255.

The application stated:

Mr. Cianfarano entered into a plea agreement with the Government with respect to a 2002 Suffolk County arrest for insurance fraud. As part of the Government's prosecution $117,000.00 which was initially seized by Suffolk County, was turned over to the Government. As part of his plea agreement, $40,000.00 out of the seized money was paid for restitution. The remainder was to be held until sentencing where it would be applied as a credit against Federal and State income taxes owed.

The plea agreement was clear in that the money being held was not subject to forfeiture and that restitution had been provided for.

When a guilty plea rests in any significant degree on a promise or agreement of the prosecutor so that it can be said to be part of inducement or consideration, such promise must be fulfilled. (F.R.Crim. P. Rule 11)

Mr. Cianfarano's plea agreement explicitly states that all seized money would be used to first pay restitution and the remainder to be used towards any income tax liability that is determined to exist.

Mr. Cianfarano relied, to his detriment, on the promises made to him regarding his plea, he now faces incarceration and the loss of over $77,000.00, which to date has not been accounted for by the Government. He also faces enormous federal tax liabilities due to the Government's failure to properly credit him with monies seized for interest, penalties and taxes.

'Where the 'plea bargain' is not kept by the [prosecutor], the sentence must be vacated and the state court will decide in light of the circumstances of each case whether due process requires (a) that there be specific performance of the plea bargain or (b) that the defendant be given the options to go to trial on the original charges.' 'In choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling weight inasmuch as the fundamental rights [flouted] by a prosecution breach of a plea bargain [are] those of the defendant, not of the State.' *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495 [30 L.Ed.2d 427] (1971).

Mr. Cianfarano has offered a specific reason why his plea should be enforced. The Government has broken a promise which was made in return for the agreement to plead guilty. By breaking this bargain, the Government has "undercut the basis for the waiver of constitutional rights implicit in the plea." *Santobello, supra.*

It is respectfully requested that this Court grant the defendant's motion in its entirety, thereby enforcing his plea agreement and grant the defendant such other, further and different relief as to this Court seems just and proper.

*Memorandum of Law in Support of Motion to Set Aside the Sentence, December 20, 2006.* In addition, the petition stated that the Court and the government had given inadequate consideration to Cianfarano's cooperation with the state authorities and his Grand Jury testimony, and therefore he should have avoided a term of imprisonment.

The Court held oral argument on the motion on December 28, 2006. During the

argument, it was explained that no restitution was assessed against Cianfarano, but rather his co-defendant, Poupis, had paid $40,000 in restitution. (Dec. 28, 2006 Argument Trans. at 7:10–20).

At oral argument, the issue of the seized funds was addressed and the government represented that the funds seized by the state authorities from the safe at the petitioner's repair shop "was turned over by Suffolk County pursuant to an order of the Supreme Court to be used in connection with Dean Poupis' plea agreement." (Dec. 28, 2006 Argument Trans. at 14:3–5). Counsel for Cianfarano argued that "if $40,000 was paid, in Dean Poupis' case .... and taken from $117,000, it is $117,000 minus 40, and then we have that difference ... $77,000 ... for which Mr. Cianfarano should get a credit for at least half." (Dec. 28, 2006 Argument Trans. at 15:16–22).

The Court determined that the petitioner had not raised any grounds to support his request for a hearing: "This agreement clearly says that whatever monies are in the North Fork Bank account ..., and it gives ... the North Fork Bank account number, that's the money involved. It has nothing to do with anything else in this plea agreement." (Dec. 28, 2006 Argument Trans. at 17:16–20). The Court further found the government could not be bound by agreements allegedly made between the petitioner and state actors:

> The Court: The state understandings that were given to you, Mr. Liotti, or to your client, or whoever represented your client at the time, and I think it was you, are really not at issue here. The assurances that you talked about, that there would be no federal prosecution, and I don't know if you were led to believe that. I don't know who gave you such assurances.

Mr. Liotti: William McDonald and Detective Robert Petro.

The Court: But they had no authority, no right to give you any assurances that there would be no federal prosecution. You had a deal, you say. The deal was with the state, I assume, that there would be no federal prosecution. And they had no right to make such a promise if they had made one in fact. This Court has no misapprehension, Mr. Liotti, about the things you just mentioned the federal government had nothing to do with the defendant's testimony before the state grand jury. That was voluntary on your part and that of your client, and without any input by the federal government. So, don't blame the federal government for the fact that your client went before a state grand jury without immunity.

The fact that the federal government brought mail fraud charges is not unusual. There are many crimes that start out in the state court, as you well know, and end up in the federal court. We have murder cases that start by indictments in the state court, and then because of various problems the indictment is withdrawn and there is a RICO case drawn in the federal court. And the patterns of racketeering are the murder charges. So that's not unusual.

As far as due process, I really don't know what violations of due process you're thinking about. Procedurally—certainly not substantive, but procedurally I don't know where you have been deprived of due process. You have gotten in my opinion all the due process you're entitled to.

As far as the defendant's tax problems, they were caused by him alone. He is the one who didn't file his prop-

er tax returns. He is the one who owes the government money, plus penalty and interest.

As far as his eviction, it is very regrettable. But really, it has nothing to do with the issues here.

. . . .

Now, I sentenced the defendant to eight months in jail. He in my opinion—although I can't say what I would do if I had actual possession of a 5K letter. I think according to my own type of routine and custom, he received the same sentence he would have gotten probably if he had a 5K letter, because I gave him credit under the minimum of 24 months, is it?

. . . .

I gave him the same thing I would have given him if he had a 5K letter. The sentence that I imposed is in my opinion sufficient, but not greater than necessary to comply with the purposes of 3553(a), the statute.

(Dec. 28, 2006 Argument Trans. at 38:10–41:3). The Court granted the petitioner's request for a stay of execution of the sentence imposed pending his appeal to the United States Court of Appeals for the Second Circuit. (Dec. 28, 2006 Argument Trans. at 43:10–13).

*The Petitioner's Appeal to the Second Circuit*

The petitioner appealed to the United States Second Circuit Court of Appeals and on August 5, 2008, the Court of Appeals dismissed the petitioner's appeal for lack of jurisdiction. The court found that the petitioner had failed to timely appeal from the entry of judgment against him. (2d Cir. Mandate, No. 07CR0108, Aug. 5, 2008, at 2–3). In addition, the court found that even if Cianfarano had timely appealed, his appeal would fail. *Id.* at 3.

The Second Circuit found that all of the arguments advanced by the petitioner, with the exception of those alleging breach of the plea agreement by the government, were barred by the waiver of appeal provision of the plea agreement. *Id.* The court further found that

Cianfarano's claims that the government coerced him into entering into a plea agreement and then violated the agreement have no merit. His coercion claim stems from his belief that the prosecutors should not have been able to threaten him with state prosecution or use his state grand jury testimony against him when negotiating a plea deal. The fact that overwhelming evidence exists and that a defendant faces potential state charges means that accepting a plea agreement may be prudent. It does not mean, however, that the plea agreement is coerced or involuntary.

It has not been established that the government violated the plea agreement. Cianfarano claims, among other things, that the government violated the plea agreement when it used $117,000 in cash it confiscated from the body shop business and funds in two Fleet Bank accounts to satisfy the tax obligations of one of his coconspirators. Regardless of the merits of Cianfarano's complaint, which we do not reach, this transaction cannot violate his plea agreement, which only mentions two North Fork bank accounts, the contents of which Cianfarano agreed would 'be paid directly to the Clerk of the Court . . . to be used to pay any restitution . . . and any federal income tax liability that is determined to exist.' The $117,00 in cash and the two Fleet Bank accounts lie outside the purview of the agreement and are not mentioned therein. Furthermore, the agreement expressly provides that it contains all promises made to Cianf[a]rano, that it supersedes all previous promises, and that all future promises

must be memorialized in writing. Therefore, the disposal of funds not covered or mentioned by the plea agreement does not violate the agreement. We have considered Cianfarano's other arguments and find them without merit. *Id.* at 4.

## II. DISCUSSION

### A. Standard of Review

Title 28 U.S.C. § 2255 provides a post conviction remedy for federal prisoners similar to the writ of habeas corpus available to state prisoners that is now codified in § 2254. Pursuant to § 2255, a federal prisoner in custody "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the basis that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack...." 28 U.S.C. § 2255.

■ As stated by the Second Circuit, "because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir.1995) (citing *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)). As a result, prisoners seeking habeas corpus relief pursuant to § 2255 must show both a violation of their Constitutional rights and "substantial prejudice" or a "fundamental miscarriage of justice." *Id.* at 301.

### B. Restrictions on Successive Petitions

■ A party seeking to file a successive petitions pursuant to 28 U.S.C. § 2255 must seek leave from the Court of Appeals. The Second Circuit has explained that

> In the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress established a gatekeeping mechanism, by which circuit courts were assigned the task of deciding in the first instance whether a successive federal habeas corpus application could proceed under AEDPA. *See* 28 U.S.C. § 2244(b)(3)(A); *Felker v. Turpin*, 518 U.S. 651, 657, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). AEDPA requires that an applicant who wishes to file a successive petition first 'move in the appropriate court of appeals for an order authorizing the district court to consider the application.' 28 U.S.C. § 2244(b)(3)(A).

*Haouari v. United States*, 510 F.3d 350, 352 (2d Cir.2007). Further, the Court of Appeals will deny the application for a successive petition unless it finds that the petition contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

*Haouari*, 510 F.3d at 352 (citing § 2255).

■ To be considered a second, or successive petition, "the disposition of an earlier petition must qualify as an adjudication on the merits." *Whab v. U.S.*, 408 F.3d 116, 118 (2d Cir.2005); *see also Carmona v. U.S.*, 390 F.3d 200, 202 (2d Cir. 2004) ("A motion will be regarded as second or successive if a previous habeas petition filed by the movant challenged the same conviction or sentence and was adju-

dicated on the merits or dismissed with prejudice."). Here, there was a prior petition filed by the petitioner on December 6, 2006 seeking to vacate the sentence and requesting resentencing. In that previous petition, the Court entered a ruling on the record, which reached the merits of Cianfarano's previous petition.

■ Cianfarano's previous petition invoked Federal Rules of Criminal Procedure 32.1; 32.2(d); 33(b)(2); 36; and 38, as well as 28 U.S.C. §§ 2241 and 2255. The Court agrees with the governments' contention that the none of the Federal Rules served as a substantive basis for his petition. Rule 32.1 deals with revoking or modifying probation or supervised release. Rule 32.2(d) provides that "[i]f a defendant appeals from a conviction or an order of forfeiture, the court may stay the order of forfeiture in terms appropriate to ensure that the property remains available pending appellate review." Although the Rules were cited, neither of these issues were raised in Cianfarano's first petition.

Further, Rule 33(b)(2) sets forth the time limit for a motion for a new trial following a verdict or determination of guilt. Rule 36 provides that the court may correct a clerical error, or one resulting from oversight or omission in a judgment, order, or other part of the record. Finally, Rule 38 deals with the procedural mechanisms of staying a sentence pending appeal, but does not serve as a substantive basis to challenge a conviction. The Court also finds that none of these Rules could have formed the basis for the grounds raised in Cianfarano's previous petition. The question, then, is whether the prior petition was brought pursuant to § 2255.

The Court finds the petitioner's argument that his previous petition was not a § 2255 petition is unconvincing. First, the petitioner relies on *United States v. Moto,* No. 02CR0038, 2003 WL 22697806, at *1 (E.D.N.Y. Nov. 7, 2003) for the proposition that where "a defendant is seeking a downward departure, which was within the sentencing court's discretion at the time of sentencing, but which does not implicate constitutional or jurisdictional issues with regard to his conviction or sentence," the petition is not one for a writ of habeas corpus. However, the *Moto* court made clear that the assertion of a constitutional challenge to a defendants' conviction or sentence is the proper basis for a petition for habeas corpus. *Id.* Here, unlike *Moto,* Cianfarano's first petition was not limited to the Court's refusal to exercise discretionary authority. Instead, Cianfarano's first petition raised constitutional arguments against his conviction and sentence to the effect that:

> " '[w]here the 'plea bargain' is not kept by the prosecution, the sentence must be vacated and the state court will decide in light of the circumstances of each case whether due process requires (a) that there be specific performance of the plea bargain or (b) that the defendant be given the options to go to trial on the original charges' " and "[b]y breaking this bargain, the Government has 'undercut the basis for the waiver of constitutional rights implicit in the plea.' "

Not only did Cianfarano's previous petition raise constitutional objections to his conviction and sentence, but the Court addressed and denied the petition on the merits in its entirety, finding that there was no evidence that the government had breached the plea agreement and that the federal authorities could not be bound by promises made by state actors. The Court, therefore, treated Cianfarano's previous petition as one pursuant for habeas relief and denied it. Further, the Court never stated that the previous petition did not properly fall within the guidelines of § 2255 and the petitioner's contention to that effect is incorrect.

Finally, the fact that the previous petition was filed in the underlying criminal action, rather than an independent civil action, is of no moment, as habeas relief was the only avenue available to Cianfarano when that petition was filed and sought to invoke such relief.

■■■ "A § 2241 petition generally challenges the execution of a federal prisoner's sentence, whereas challenges to the underlying conviction and sentence are properly raised in a § 2255 petition." *Grullon v. Ashcroft,* 374 F.3d 137, 139 (2d Cir.2004). Further, "when a district court is presented with a § 2241 petition raising claims that are properly the subject of a § 2255 petition, it may construe the petition as a successive habeas petition and transfer it to [the Second Circuit] … so long as the petitioner's earlier § 2255 petition was dismissed on the merits." *Id.* (finding that those claims concerning the petitioner's underlying conviction and sentence should be construed as a § 2255 petition).

In *Adams v. United States,* 372 F.3d 132 (2d Cir.2004), the Second Circuit explained that:

> Title 28 U.S.C. §§ 2241 and 2255 each create mechanisms for a federal prisoner to challenge his detention, but the two sections offer relief for different kinds of perceived wrongs. Section 2255 provides relief in cases where the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack. We have held that § 2255 is the appropriate vehicle for a federal prisoner to challenge the imposition of his sentence. …. In a § 2241 petition a prisoner may seek relief from such things as, for example, the administration of his parole, computation of his sentence by parole officials, disciplinary actions taken against him, the type of detention, and prison conditions in the facility where he is incarcerated. In addition, § 2241(c)(3) also grants federal courts authority to entertain habeas petitions from prisoners 'in custody in violation of the Constitution or laws or treaties of the United States.' This language appears to create an overlap between § 2255 and § 2241. But we have ruled that federal prisoners generally must invoke § 2255 instead of § 2241 to challenge a sentence as violating the U.S. Constitution or laws.

*Adams,* 372 F.3d at 134–35 (internal citations omitted).

A petitioner may file pursuant to § 2241(c)(3) where § 2255 is inadequate or ineffective to challenge his detention. *See id.* at 135. However, § 2255 "is not inadequate or ineffective simply because the prisoner [is procedurally barred from pursuing § 2255 relief], so long as the claim the prisoner seeks to raise was previously available to him on direct appeal or in a prior § 2255 petition." *Id.*

■■■ Further, the Second Circuit has recognized that a petitioner may seek relief under § 2241(c)(3) where, for whatever reason, the petitioner cannot utilize § 2255 and "failure to obtain collateral review raises serious constitutional questions." *Id.;* *Triestman v. United States,* 124 F.3d 361, 377 (2d Cir.1997). A constitutional question may be raised: (1) where the petitioner claims actual innocence and could not have effectively raised his claims at an earlier time; or (2) the retroactivity of a new principle of law—a rule recognized in other Circuits. *Cephas v. Nash,* 328 F.3d 98, 104 (2d Cir.2003).

Here, although part of the result sought in Cianfarano's initial petition was a stay of execution of his sentence, the applica-

tion attacked the underlying conviction and sentence and did not raise claims of due process violations with regard to the execution of his sentence, such as abuses by prison officials.

■ Further, Cianfarano contends that Court should apply § 2241 to this matter because, like a new principle of law, he was not aware of the alleged misconduct by the government at the time of sentencing. However, all of the claims raised by Cianfarano in the present petition were available to him in the previous petition, filed in December of 2006, and most were raised at that time. "[W]hen a prisoner has already had a § 2255 petition dismissed on the merits, a district court faced with a § 2241 petition raising previously available claims that are properly the subject of a § 2255 motion should treat the motion as a second or successive § 2255 motion and refer it to this Court for certification." *Adams*, 372 F.3d at 136.

Finally, Cianfarano's present petition does not raise a claim of innocence and such a claim, if asserted, could have been raised in the previous petition. In addition, no new principle of law has been raised or asserted. Accordingly, both petitions are properly construed as § 2255 petitions and this Court is without jurisdiction to rule on the present, second § 2255 application. The Court must transfer this petition to the Second Circuit for its consideration as a successive § 2255 petition.

## C. As to the Merits of Cianfarano's Claims

As a successive § 2255 petition, this matter must be referred to the Second Circuit. However, to complete the record, the Court finds Cianfarano's contentions to be without merit and would have been ineffective to alter the sentence imposed in this case.

As an initial matter, the Court notes that the Second Circuit has determined that the waiver provision contained in the plea agreement was valid and enforceable. The provision expressly states that the petitioner would "not file an appeal or otherwise challenge the conviction or sentence in the event that the Court impose[d] term of imprisonment of 33 months or below." (Cianfarano Plea Agreement at ¶ 4). Thus, the most of Cianfarano's claims are barred by his previous agreement to refrain from filing an appeal.

Moreover, the Court determined in its decision on Cianfarano's first petition that any agreement made with the state authorities would have no binding effect on the federal authorities. Further, both this Court and the Second Circuit have already found that the petitioner failed to establish that the application of monies seized for either the restitution or tax liability of Poupis in no way violated Cianfarano's plea agreement. Importantly, when this issue was raised before during Cianfarano's plea allocution, Judge Boyle explicitly confirmed that the agreement covered only those funds in two North Fork bank accounts and any additional matters were outside the purview of the agreement. Given this admonition, Cianfarano stated his understanding of the agreement and chose to enter a guilty plea.

In addition, with respect to his contention that the looming threat of deportation caused Cianfarano to enter into the plea agreement offered by the government, at the plea proceeding, Judge Boyle advised Cianfarano that this was a mandatory deportation case. Once again, Cianfarano expressed his understanding and made the informed decision to plead guilty.

Also, this Court advised Cianfarano at sentencing that his Section 5K2 statement was given the same weight and treatment that a Section 5K1 letter would have received, so that even if Cianfarano had received a Section 5K1 letter from the gov-

ernment, the resulting sentence would have been the same.

Further, the petitioner's contention that the government's failure to produce a *Petite* policy letter pursuant to *Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960), was part of an effort to cover-up a dubious and unconstitutional prosecution is unavailing. The Second Circuit has recently pronounced that:

> [The *Petite* ] policy precludes the initiation or continuation of a federal prosecution following a prior state or federal prosecution based on substantially the same acts or transactions, absent a finding that the prosecution serves 'compelling interests of federal law enforcement.' *Thompson v. United States*, 444 U.S. 248, 248, 100 S.Ct. 512, 62 L.Ed.2d 457 (1980) (internal quotation marks omitted). We have squarely held that the *Petite* policy 'affords defendants no substantive rights.' *United States v. Catino*, 735 F.2d 718, 725 (2d Cir.1984). Rather, that policy 'is merely an internal guideline for exercise of prosecutorial discretion, not subject to judicial review.' *United States v. Ng*, 699 F.2d 63, 71 (2d Cir.1983). Accordingly, [the defendant] may not invoke the *Petite* policy as a bar to his federal prosecution.

*United States v. Cote*, 544 F.3d 88, 104 (2d Cir.2008).

Finally, Cianfarano surrendered to the United States Marshall's Office on October 15, 2008. Accordingly, his claim regarding the potential loss of the property lease under which he maintains his business is apparently moot. However, even if still a viable concern, the potential loss of this lease upon incarceration would not have resulted in the imposition of a different sentence in this case.

## III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED,** that this matter is transferred to the United States Court of Appeals for the Second Circuit in accordance with 28 U.S.C. § 2255 for consideration of its certification as a permissible successive § 2255 petition.

**SO ORDERED.**